**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jarold SKINNER, a/k/a Jeff Thomas,
Defendant–Appellant.**

**No. 91–2910.**

United States Court of Appeals,
Seventh Circuit.

Argued April 1, 1992.

Decided Aug. 19, 1992.

Rehearing Denied Sept. 10, 1992.

K. Tate Chambers, Asst. U.S. Atty., Peoria, Ill., Rodger A. Heaton, Asst. U.S. Atty., Springfield, Ill. (argued), for plaintiff-appellee.

Thomas R. Iben, Peoria, Ill. (argued), for defendant-appellant.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and NOLAND, Senior District Judge.[*]

JAMES E. NOLAND, Senior District Judge.

This is a direct criminal appeal in which defendant-appellant Jarold Skinner, a/k/a Jeff Thomas (hereinafter "Skinner"), challenges the district court's rulings (both initially and on reconsideration) on his Motion to Quash and Suppress, and on his Motion requesting a *Franks* Hearing. We affirm.

## I. BACKGROUND

On February 13, 1990, the Drug Enforcement Administration (DEA) office in Springfield, Illinois, received an anonymous three page letter which described, in detail, a marijuana distribution organization which was then operating in the Peoria, Illinois area.[1] The letter indicated how the organization smuggled marijuana from Mexico (where it was allegedly supplied by Mexican federalies) through Tucson, Arizona, to Peoria, Illinois, and the roles of the individuals involved, and included an organizational flow chart. One of the individuals implicated in the letter was defendant-appellant Jarold Skinner (hereinafter "Skinner").

On March 12, 1990, Drug Enforcement Administration (DEA) Agent Thomas E. Kelly filed a fourteen page Application and Affidavit for Search Warrant. In the Affidavit, which contained descriptions of the three residences which Agent Kelly and the other agents sought to search and the items they sought to seize, Kelly set out the contents of the letter in separate paragraphs and described the DEA's efforts to corroborate the same. Kelly also described his experience as a law enforcement officer and his knowledge of marijuana traffickers' behavior.

On the same day, United States Magistrate Judge Robert J. Kauffman reviewed Agent Kelly's Application and Affidavit for Search Warrant(s). Magistrate Judge Kauffman issued three search warrants including the Warrant to search Skinner's residence located at 1629 Bourland Avenue, Peoria, Illinois. The Search Warrant contained a recital that the judicial officer who had issued the Warrant was satisfied that the affidavit and any recorded testimony "establish[es] probable cause to believe that the ... property so described is now concealed on the ... premises above-described and establish[es] grounds for the issuance of this warrant." The Warrant authorized Agent Kelly and any authorized officer of the United States to search for evidence, fruits and instrumentalities of illegal trafficking in controlled substances as more fully described in an attachment to the Warrant.

The address of the residence to be searched was set out in the Search Warrant. The residence was further described as follows:

---

[*] The Honorable James E. Noland, Senior District Judge for the Southern District of Indiana, is sitting by designation. This opinion was in press on August 12, 1992, the date of Judge Noland's death.

1. Postmarked February 9, 1990, the letter had originally been sent to the United States Secret Service in Peoria, Illinois. It was subsequently forwarded to the Drug Enforcement Administration (DEA).

A one-story white house with pink gables, facing east. This house has a detached one-car garage, also facing east. The garage is southwest of this house. The address '1629' is displayed on the front of the house.

On March 14, 1990, the above-described search warrants were executed. During the search of Skinner's residence, the agents discovered twenty-nine pounds of marijuana (in thirty-seven bags) and various drug paraphernalia. Skinner was questioned following the search. At that time, he admitted his involvement in the distribution of marijuana, stating that he usually dealt in five to ten pound quantities.

On August 23, 1990, Skinner was indicted by a federal grand jury. He was charged with possession with the intent to distribute marijuana, a Schedule I controlled substance, in violation of 21 U.S.C. § 841(a)(1). Skinner was arrested on September 13, 1990.

On October 24, 1990, Skinner's trial counsel (now his appellate counsel), filed a Motion to Quash and Suppress. Skinner aleged in the Motion that the Search Warrant should be quashed and the evidence obtained during the search suppressed because the Warrant was insufficient on its face, neither the search of the residence nor his arrest were supported by probable cause, and the Warrant was otherwise violative of his Constitutional rights. On November 2, 1990, Skinner filed his "Memorandum Re: Affidavit for Warrant." On November 5, 1990, District Judge Michael M. Mihm conducted a hearing on Skinner's Motion. During the hearing, the parties based their arguments regarding probable cause on *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Judge Mihm denied Skinner's Motion the same day finding that while it was "very close," Agent Kelly's affidavit presented sufficient facts for the Magistrate Judge to issue the Warrant based upon his conclusion that probable cause existed.

On November 26, 1990, Skinner filed his Joint Motion to Reconsider the denial of his Motion to Quash and Suppress, and his "Motion to Suppress—Franks." In his "Motion to Suppress—Franks," Skinner drew the district court's attention to information contained in the Search Warrant which he alleged was erroneous. He urged the Court to conduct a *Franks* hearing to determine whether Agent Kelly's affidavit contained false information. In his Joint Motion to Reconsider, Skinner made reference to the United States Supreme Court's decision in *Alabama v. White*, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), which was handed down on June 11, 1990, following the issuance of the Search Warrant. The government responded to the Motion to Reconsider in due course.

On December 14, 1990, the Court conducted a second hearing, at the conclusion of which it denied both of Skinner's motions. Citing the United States Supreme Court's recent decision in *Alabama v. White*, Judge Mihm vacated his previous probable cause ruling and found that although probable cause did *not* exist, the officers reasonably and in good faith relied upon the Warrant which had been issued by the Magistrate Judge. Judge Mihm vacated his previous probable cause ruling because he interpreted *Alabama v. White* as requiring that anonymous tipsters must do more than provide facts which are subsequently corroborated by law enforcement officers—they must accurately predict future behavior that is *not* generally observable by members of the public.

Judge Mihm's conclusion with respect to good faith was based upon his conclusion that the law was in a "state of flux" under the test set out in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), at the time that Agent Kelly applied for the Search Warrant. Judge Mihm thus found that Agent Kelly had acted in good faith in relying upon Magistrate Judge Kauffman's decision to issue the Warrant.

At the same time, Judge Mihm denied Skinner's request for a *Franks* hearing. On this point, Judge Mihm found that Skinner had failed to make a sufficient showing to warrant such a hearing. On January 11, 1991, Skinner filed his Motion to Reconsid-

er. His Motion was denied on January 30, 1991.

On March 13, 1991, Skinner entered a conditional plea of guilty, pursuant to the parties' written "Conditional Plea Agreement," to possession of marijuana with the intent to distribute the same. *See* 21 U.S.C. § 841(a)(1). Skinner's conditional plea preserved his right to appeal the issues he had raised under *Leon* and *Franks*. At the conclusion of his change of plea hearing, the United States Probation Office was directed to prepare a presentence investigation report.

On August 2, 1991, Judge Mihm accepted the parties' plea agreement and sentenced Skinner to a ninety-six (96) month term of imprisonment to be followed by a four (4) year term of supervised release. Skinner filed his Notice of Appeal on August 12, 1991.

## II. ANALYSIS

Skinner argues that (1) application of the *Leon* good faith exception is not justified in this case, and (2) the district court judge erred in denying his request to hold a *Franks* hearing given the fact that the affidavit filed in support of the Search Warrant's issuance contained misinformation. We have jurisdiction over the present dispute by virtue of 28 U.S.C. §§ 1291, and 1294(1) (1992), and Rule 11(a)(2) [2] of the Federal Rules of Criminal Procedure.

### A. *Leon* Good Faith Exception

The first issue which this Court must resolve is whether the law enforcement officers who searched Skinner's residence pursuant to the Search Warrant are entitled to the benefit of the *Leon* good faith exception. The parties agree that the Warrant was *not* supported by the existence of probable cause.

■ The Fourth Amendment to the United States Constitution provides as follows:

**2.** Rule 11(a)(2) of the Federal Rules of Criminal Procedure provides as follows:

(2) **Conditional Pleas.** With the approval of the court and the consent of the government, a defendant may enter a conditional plea of guilty or nolo contendere, reserving in writing

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV. "Probable cause exists where 'the facts and circumstances within their (the officers') knowledge and of which they had reasonably trustworthy information (are) sufficient in themselves to warrant a man of reasonable caution in the belief that' an offense has been or is being committed." *United States v. Chapman*, 954 F.2d 1352, 1357 (7th Cir.1992) (*quoting Brinegar v. United States*, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949) (*quoting Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543 (1925))).

In *Illinois v. Gates, supra*, 462 U.S. at 233, 103 S.Ct. at 2329, the United States Supreme Court "abandoned the 'two-pronged test' of *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), in favor of a 'totality of the circumstances' approach to determining whether an informant's tip establishes probable cause." *Alabama v. White, supra*, 496 U.S. at 328, 110 S.Ct. at 2415. The *Gates* Court noted that:

probable cause is a fluid concept—turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules.

The *Gates* Court rejected the "excessively technical dissection of informant's tips" which had developed under *Aguilar* and *Spinelli*, in favor of a less demanding commonsense approach:

the right, on appeal from the judgment, to review the adverse determination of any specified pretrial motion. A defendant who prevails on appeal shall be allowed to withdraw the plea.

[E]ven if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed firsthand, entitles his tip to greater weight than might otherwise be the case.

*Illinois v. Gates, supra,* 462 U.S. at 235, 103 S.Ct. at 2331.

While *Gates* discussed the import of predictions of future behavior in the determination of probable cause, finding that where an informant is able to accurately predict such future activity, "it [i]s not unlikely that he also ha[s] access to reliable information of the [defendant's] illegal activities," *Id.,* 462 U.S. at 245–246, 103 S.Ct. at 2336, the importance of an informant's ability to predict future conduct was not fully crystallized until the Supreme Court decided *Alabama v. White, supra,* 496 U.S. at 332, 110 S.Ct. at 2417.

In *Alabama v. White,* the Supreme Court granted the State of Alabama's petition for a writ of certiorari "[b]ecause of differing views in the state and federal courts over whether an anonymous tip may furnish reasonable suspicion for a stop[.]" *Id.,* 496 U.S. at 328, 110 S.Ct. at 2415. While the Court addressed its attention specifically to the issue of *Terry* stops, it concluded as follows with regard to the corroboration of anonymous tips:

> We think it also important that, as in *Gates,* "the anonymous [tip] contained a range of details relating not just to easily obtained facts and conditions existing at the time of the tip, but to future actions of third parties ordinarily not easily predicted." *Gates,* 462 U.S., at 245, 103 S.Ct., at 2335–36. The fact that officers found a car precisely matching the caller's description in front of the 235 building is an example of the former. Anyone could have "predicted" that fact because it was a condition presumably existing at the time of the call. What was important was the caller's ability to predict respondent's future behavior, because it

demonstrated inside information—a special familiarity with respondent's affairs.

*Alabama v. White, supra,* 496 U.S. at 332, 110 S.Ct. at 2417.

In *United States v. Leon, supra,* 468 U.S. at 926, 104 S.Ct. at 3422, which was decided after *Gates* but before *Alabama v. White,* the Court held that:

> In the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause.

■ We conclude, on the facts of the present case, that Judge Mihm correctly denied Skinner's Motion to Suppress on the authority of *Leon.* This case boils down to the question of whether the officers could have reasonably believed that the Search Warrant was supported by probable cause, which we answer in the affirmative. As Chief Judge Bauer recently explained, "It is enough, for purposes of assessing probable cause, that '[c]orroboration through other sources of information reduced the chances of [the informant telling] a reckless or prevaricating tale,' thus providing 'a substantial basis for crediting the hearsay.'" *United States v. Spears,* 965 F.2d 262, 272 (7th Cir.1992) *(citing Gates,* 462 U.S. at 244–245, 103 S.Ct. at 2335 *(quoting Jones v. United States,* 362 U.S. 257, 269, 271, 80 S.Ct. 725, 735–736, 4 L.Ed.2d 697 (1960))).[3] This is precisely what occurred in the present case. Acting upon the anonymous tipster's letter, Agent Kelly and other law enforcement officers conducted an investigation which resulted in the corroboration of a number (albeit not all) of the anonymous tipster's factual assertions.

The fact that the officers apparently did not observe conduct which we would find to be highly suspicious or unlawful does not, however, lead to the conclusion that the officers did not act in good faith in

---

**3.** In *Spears, supra,* 965 F.2d at 269, the Court held that Fourth Amendment warrant and non-

warrant cases are both governed by the clearly erroneous standard of review.

relying upon the Magistrate Judge's conclusion that probable cause existed to support the issuance of the Search Warrant. *United States v. Laws*, 808 F.2d 92, 103–104 (D.C.Cir.1986);[4] *United States v. Lechuga*, 925 F.2d 1035, 1038–1039 (7th Cir. 1991). As noted above, the officers corroborated a number of the anonymous tipsters' factual assertions, including the mailing of packages (allegedly containing large amounts of money) *via* the United Parcel Service (UPS) from Peoria, Illinois to B & M Automotive Specialties of Tucson, Arizona.[5]

One of the more significant facts contained in the anonymous letter which was corroborated by the officers' investigation was the prior criminal activity of two of the individuals who were identified as members of the marijuana distribution organization. The anonymous letter indicated that both Skinner and Cox had previously been convicted of drug offenses. When queried by the investigating officers, the National Crime Information Center (NCIC) confirmed that 1) sometime after October 25, 1984, Skinner pleaded guilty and was convicted of two counts of unlawful delivery of a controlled substance, and 2) Cox was arrested in 1987 and convicted for possession of cannabis, and arrested on October 10, 1989, for possession of a controlled substance.[6] Although Skinner and Cox's prior criminality does not compel the conclusion that the Search Warrant was supported by probable cause, it was yet an additional circumstance which, when considered in combination with the other facts and circumstances, convinces this Court that the officers' belief that the Search Warrant was supported by probable cause was reasonable. *United States v. Laws*, *supra*, 808 F.2d at 104 (considering "the

suspects' records of involvement in drug trafficking" as one of the elements which, when considered in combination with other circumstances including the reasonable inferences which could be drawn by a law enforcement officer, "provided a substantial basis for a finding of probable cause[.]").

Given Agent Kelly's extensive experience in law enforcement (in particular, his knowledge of the standard behavior of drug traffickers), the detailed nature and number of the facts which were provided in the anonymous tipster's letter and ultimately corroborated (which facts would not be sufficient, without more, to lead to the conclusion that the Warrant was supported by probable cause), we conclude that the officers had a reasonable belief that the Warrant was supported by probable cause.

The fact that the anonymous letter did not contain detailed predictions of the Skinner's future conduct, or the future conduct of his confederates (beyond the implicit prediction that packages would continue to be sent to B & M Automotive Specialties *via* UPS), is not fatal to Judge Mihm's conclusion that the *Leon* good faith exception was satisfied in the present case. We agree with Judge Mihm's conclusion, which was central to his ultimate finding that the officers in the present case acted in good faith, that until *Alabama v. White* was decided, the question of precisely what was required in the way of corroboration of an anonymous tipster's factual assertions was unsettled. *See United States v. Zucco*, 694 F.2d 44, 49 (2d Cir.1982) (the court concluded, prior to *Alabama v. White*, that "[s]tanding alone, extensive corroboration of innocent detail can suffice to establish the informant's credibility.").

---

4. As the District of Columbia Circuit observed in *Laws:*

> A deduction of possible criminality often is warranted when a law-enforcement officer witnesses suspicious behavior personally. Perhaps more often, however, first-hand observation—particularly of a crime like drug-trafficking, which usually is accomplished professionally and furtively—is well-nigh impossible, and the use of informants is imperative.

*Id.*, 808 F.2d at 104.

5. The one detail that the officers did not corroborate in the present case was the fact that packages contained large amounts of money.

6. The Kelly Affidavit indicated that the disposition of the 1989 arrest was unavailable. *Search Warrant Affidavit*, pp. 10–11.

▉ Finally, Skinner's suggestion that certain of the anonymous tipsters' factual assertions may well have been stale is simply not persuasive. First, the role of staleness in the determination of probable cause is limited. *United States v. Chapman, supra,* 954 F.2d at 1373 *(citing United States v. Certain Real Property, Commonly Known as 6250 Ledge Road, Egg Harbor, WI,* 943 F.2d 721, 724 (7th Cir. 1991)). Second, as the government argued during the hearing on Skinner's Motion to Reconsider, the fact that the affidavit recited "indicating ongoing, continuous activity" made the passage of time "less critical." *United States v. Lamon,* 930 F.2d 1183, 1188 (7th Cir.1981) *(quoting United States v. Shomo,* 786 F.2d 981, 984 (10th Cir.1986) (dicta), and *citing United States v. Angulo–Lopez,* 791 F.2d 1394, 1399 (9th Cir.1986)). *Transcript of Hearing on Motion to Reconsider,* p. 31.

### B. Denial of Request for *Franks* Hearing

▉ The second issue which the Court must resolve is whether Judge Mihm erred in denying Skinner's request for a *Franks* hearing. The legal principles which are applicable to requests for *Franks* hearings are well-settled:

> In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the United States Supreme Court held that intentionally or recklessly submitting false statements in a warrant affidavit violates the Fourth Amendment. *Id.* at 164–65, 98 S.Ct. at 2680–81. The Court further held that in certain limited situations, a defendant may obtain a hearing to present evidence to challenge the warrant affidavit's truth. *To obtain an evidentiary hearing, the defendant must make a "substantial preliminary showing" that the affiant has intentionally or recklessly included a false statement in the warrant affidavit, and that the false statement is material, in the sense that it is necessary to find probable cause.* Id. at 155–56, 171–72, 98 S.Ct. at 2676–77, 2684–85.

*United States v. Pace,* 898 F.2d 1218, 1226 (7th Cir.1990) (emphasis added); *accord United States v. McNeese,* 901 F.2d 585,

594 (7th Cir.1990) *(citing United States v. Hornick,* 815 F.2d 1156, 1158 (7th Cir.1987) (the defendant "bears a substantial burden to demonstrate probable falsity.")). The defendant "must offer direct evidence of the affiant's state of mind or inferential evidence that the affiant had obvious reasons for omitting facts in order to prove deliberate falsehood or reckless disregard." *McNeese,* 901 F.2d at 594 *(citing United States v. Residence Located at 218 Third Street,* 805 F.2d 256, 259 (7th Cir.1986)). In *Pace,* the Court held that the standard of review to be applied when examining a district court's decision denying a *Franks* hearing is the clearly erroneous standard. *Id.,* at 1226–1227.

▉ The district court did not err in denying Skinner's request to conduct a *Franks* hearing. A careful review of the record and Skinner's Motion demonstrates that Skinner failed to show that DEA Agent Kelly intentionally or recklessly included false statements in his affidavit, or that the statements he asserts were false were material, in the sense that they were necessary to find probable cause. The record demonstrates that Agent Kelly carefully corroborated a significant number of the facts which had been set forth in the letter, and that the few errors which were made during the investigatory process were either so minor as to be inconsequential (i.e., the substitution of the number "5" for what should have been a letter "S" in Skinner's identification number) or were otherwise corroborated (i.e., while the Peoria City Directory did not corroborate the anonymous tipster's assertion that Skinner "operated" the house located at 1629 Bourland Avenue by using Scott Hinnen's name for utilities, Central Illinois Light records did furnish such corroboration).

### III. CONCLUSION

For the foregoing reasons, the Court concludes that the district court did not err in denying (both as an initial matter and on reconsideration) defendant-appellant Skinner's Motion to Quash and Suppress, and his Motion requesting a *Franks* Hearing.

The defendant-appellant's conviction is therefore AFFIRMED.