**UNITED STATES of America, Plaintiff,**

v.

**Shawn A. CRENSHAW, and Venson A. Stark, Defendants.**

**No. 92–CR–206.**

United States District Court, E.D. Wisconsin.

Feb. 18, 1993.

William J. Lipscomb, Asst. U.S. Atty., U.S. Attys. Office, Milwaukee, WI, for plaintiff.

James M. Shellow, Craig W. Albee, Shellow, Shellow & Glynn, S.C., Milwaukee, WI, for defendant Shawn A. Crenshaw.

Thomas G. Wilmouth, Thomas G. Wilmouth Law Office, Milwaukee, WI, for defendant Venson A. Stark.

### ORDER

STADTMUELLER, District Judge.

On October 26, 1992, a grand jury sitting in this district returned a two count indictment charging defendants Shawn Andre Crenshaw and Venson Stark in count one with possessing, with the intent to distribute, cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2; and defendant Crenshaw

in count two with knowingly using and possessing firearms during and in relation to a drug-trafficking crime in violation of 18 U.S.C. §§ 924(c) and 2. Both defendants have been arraigned and entered pleas of not guilty. Crenshaw has filed a number of pretrial motions. Stark has recently moved to adopt certain pretrial motions of his co-defendant Crenshaw. These motions were referred to the Honorable Aaron E. Goodstein, United States Magistrate Judge for consideration.

On January 28, 1993, Judge Goodstein issued a recommendation that the court grant Crenshaw's motions to suppress evidence found during the execution of a search warrant, along with any statements obtained during the search, as well as evidence seized from Crenshaw's vehicle. The government filed timely objections to the magistrate's recommendation noting at the same time that it did not object to suppression of Crenshaw's statements. Crenshaw filed objections to the magistrate's recommendation, but only as to denial of his suppression motion on an alternative ground, and filed a response to the government's objections. In addition, both Crenshaw and the government have filed supplemental memoranda in support of their respective positions on the motions to suppress.

This court is required to make a *de novo* review of the magistrate judge's recommendation pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 13.03(c) (E.D.Wis.).

## I. Background

On October 19, 1992, Milwaukee police officers executed a search warrant at the premises of Shawn Crenshaw's sister, Gina, located at 2545 N. 24th Street in Milwaukee, Wisconsin. In his pretrial motion, Crenshaw challenges the veracity of statements included in the warrant application and at the same time alleges infirmities in the execution of the warrant.

On December 1, 1992, before Stark made an appearance in this district, Judge Goodstein conducted an evidentiary hearing on Crenshaw's motions to suppress. Testifying at the hearing on behalf of the government was Milwaukee Police Detective Oscar O. Perez and Milwaukee Police Officer Lawrence DeValkenaere. Testifying on behalf of the defendant Crenshaw was licensed private detective Andrea Kvidera. Crenshaw also testified on his own behalf. Based upon the testimony at that portion of the evidentiary hearing conducted pursuant to *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), Judge Goodstein made numerous findings of fact, as set forth in his recommendation. The government does not object to the factual findings made by the magistrate, which, together with the court's own findings, are summarized below.

Sometime on or shortly before October 14, 1992, a confidential informant, later identified as Gloria Martin, contacted Detective Perez. On this day, Martin lived in the second floor flat at 2541 N. 24th Street, Milwaukee. Martin reported to Perez that she looked out one of the kitchen windows in her flat into a kitchen window of the adjacent residence at 2545 N. 24th Street and saw two black males whom she believed were dividing a kilogram of cocaine into one-ounce sized packets. Martin reported that she made the observation after dark, that the lights inside of the flat next door were turned on, but the lights in her kitchen were turned off.

On October 14, 1992, armed with the information provided by Martin, Detective Perez prepared an affidavit for a search warrant for the premises at 2545 N. 24th Street, using a preprinted form. That same day, Perez met with Milwaukee County Assistant District Attorney Phillip Arieff to discuss obtaining the search warrant. Perez testified that he went over the content of the affidavit with Arieff before swearing to it. (Transcript ("Tr.") of Evidentiary Hearing before Magistrate Judge Aaron E. Goodstein, December 1, 1992, at p. 70). Perez testified as follows:

I said something to the effect that I have an observation affidavit for cocaine for the premises 2545 North 24th Street. I had indicated there were some unusual circumstances in this case. The unusual circumstances were the fact that the informant who made the observations was directly next to and within approximately five feet of the kitchen window that abuts her kitch-

en window to the upper flat, and personally observed, looking inside her window through the inside of the other window, that she had observed a quantity of cocaine lying on a table, and that there was a black male in possession of the cocaine. I had indicated that to him in its entirety. He said okay fine ... He read through it in its entirety and asked me to swear to it. And I swore to it.

Tr. 74. Perez indicated that he had made it clear to Arieff that Martin had not been inside the premises at 2545 N. 24th Street. Tr. 71. In a sworn affidavit, Arieff corroborates Perez' testimony, stating that he was told by Perez that Martin, the informant, made the observations of the drugs from a vantage point outside the target premises.

In sum, Perez' testimony reveals that he and Arieff had not discussed the inclusion of a false statement in the affidavit, *per se*, however, they did discuss the particulars and specific formulation of the affidavit including the fact that Martin had not been inside the premises.

Despite the fact that Perez and Arieff apparently discussed the fact that Martin had never been inside the premises at 2545 N. 24th Street, and that her observations were made from outside the premises, paragraph eight (8) of Perez' affidavit states:

> 8) **That the affiant was informed by the informant referred to above that within the past 72 hours informant was inside the premises of (Description of Trafficker)** *2545 N. 24TH ST. OCCUPIED BY JOHN DOE (B/M) 38 YOA, 5'9" 190 blk blk, brn.* **located at** *CITY AND CO. OF MILW. STATE OF WISC.* **more particularly described in paragraph 7 of this affidavit and personally observed** *JOHN DOE (B/M 38 yoa, 5'9", 190 lbs, blk, brn, med bld IN POSSESSION OF A QUANTITY OF COCAINE. THE C.I. OBSERVED JOHN DOE B/M IN POSSESSION OF THE COCAINE INSIDE 2545 N. 24TH ST. (UPPER), IN THE KITCHEN AREA, WITHIN THE PAST 72 HOURS.* **that informant knows that this was** *COCAINE* **because (Explain Reason for Reliability of Informant's Knowledge that Substance is a Controlled Sub-**

stance.) *THE INFORMANT HAS PERSONALLY CONSUMED, SOLD, AND PURCHASED COCAINE IN THE PAST. THE INFORMANT HAS, UNDER THE DIRECTION OF THE AFFIANT, PURCHASED IN THE PAST. THIS COCAINE WAS POSITIVELY TESTED BY AFFIANT AS BEING COCAINE. FROM THE DESCRIPTION OF THE COCAINE OBSERVED BY THE INFORMANT, THE AFFIANT BELIEVES THE SUBSTANCE TO BE COCAINE.;* (italicized constitutes handwritten text in original; remainder is pre-printed text in original).

The affidavit states that the contents are offered under oath, having been sworn; the affidavit was signed by officer Perez and notarized by Arieff. Next, Detective Perez appeared alone before Circuit Court Commissioner Audrey Brooks and, in reliance upon Perez' affidavit, Commissioner Brooks authorized a "no-knock" warrant to search the premises at 2545 N. 24th Street.

Perez testified that in securing the warrant he engaged in general casual conversation with Commissioner Brooks, although not in as much detail as with Arieff, and he might have mentioned something about the informant not actually being inside the premises at 2545 N. 24th Street. Tr. 90. He did not tell Brooks that the affidavit contained a false statement because he believed that there was no false statement in the affidavit. Tr. 80. Reviewing Perez' testimony, this court concurs with Judge Goodstein's observation that:

> Perez, at best, expressed this as a possibility and given Perez' uncertainty about this important matter, and the self serving nature of his statement that he might have mentioned it during casual conversation, the court finds that Perez failed to advise Commissioner Brooks that the affidavit contained false information in paragraph eight; that when Commissioner Brooks issued the search warrant, she did not know that the informant was not inside the premises at 2545 N. 24th St. at the time of the events described.

Rec. at pp. 4–5.

Perez testified that he knew it was a violation of the law to swear to a false statement,

but he drafted the affidavit as he did to protect the informant, whose identity at that time was intended to be kept secret. Tr. 72–73. His main concern with the affidavit in its present form was the safety of the informant, Tr. 72–73, and he and Arieff shared those concerns. Tr. 89. Arieff stated in his affidavit that he was concerned that Perez' affidavit be a true and accurate representation of the facts, but not so specific as to endanger the informant.

Perez further testified that he had never been to the location prior to the execution of the warrant and had no way of knowing whether Martin was able to make the observations she described. Perez stated that the distance from Martin's house to Crenshaw's house was five feet but acknowledged that the distance between the houses could be seven feet. He said that the upper levels could be even further set back from each other and that the distance from Martin's alleged vantage point to the kitchen table where she asserted she saw cocaine could be twenty feet. Perez did not know what type of windows were on either residence at the time. Tr. 75–76.

Perez testified that he did not know of any procedure in state court for having an affidavit sealed after obtaining a search warrant, and he did not "recall ever making a request or having it sealed from anyone." Tr. 95 It is his understanding that after a warrant is returned, the affidavit becomes a matter of public record. Tr. 95–96.

Finally, Perez also claims that he did not intend the portion which he wrote by hand to relate back to the pre-printed text, and accordingly, he does not believe there is a false statement in the affidavit. Tr. 77–78. In his affidavit, Arieff believes that the handwritten narrative of paragraph 8 is a true and correct representation of what Martin had observed. Significantly, Arieff states that he "inadvertently did not notice the inappropriateness" of the "informant was inside the premises" language of paragraph 8 and, only later, as a result of this litigation, did he come to realize that the "informant was inside the premises" language was inaccurate. Notably, Arieff swears that he was assured by Perez that the second half of paragraph 8, the handwritten

narrative, was true, and its formulation was sufficient to accurately describe the probable cause for the search warrant, yet, curiously Arieff does not make mention of whether Perez assured him of the accuracy of the false statement, "informant was inside the premises."

## II. Discussion

Under the rule established by the Supreme Court in *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978), a defendant seeking the invalidation of a warrant on the basis of a false statement in the warrant affidavit must establish three elements by the preponderance of the evidence: (1) a factual statement made in an affidavit supporting a warrant is false; (2) the affiant made the false statement either knowingly and intentionally or with reckless disregard for the truth; and (3) without the false statement, the remainder of the affidavit is insufficient to establish probable cause. *U.S. v. McNeese*, 901 F.2d 585, 593–94 (7th Cir.1990); *United States v. Skinner*, 972 F.2d 171, 177 (7th Cir.1992).

The government concedes that Crenshaw has established the first two elements of his *Franks* claim. With respect to the third element, the government argues that the false statement was not material and, without that statement, the affidavit still supports a finding of probable cause. Specifically, the government asserts that the words "inside the premises" can be removed from paragraph 8 without an adverse effect upon the remainder of the paragraph.

In his analysis of the search warrant affidavit, Judge Goodstein concluded that the case presented the following issue: "the question which the court must answer is to what extent does the false statement taint the balance of the affidavit. *See United States v. Oakley*, 944 F.2d 384, 386 (7th Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 1508, 117 L.Ed.2d 646 (1992) (court must consider whether 'the untainted information, considered by itself, establishes probable cause for the warrant to issue'; *quoting James v. United States*, 418 F.2d 1150, 1151 (D.C.Cir. 1969))." Recommendation at p. 7. The government contends that this question mis-

states the issue and led Judge Goodstein to the wrong conclusion. The government puts the issue this way: "is the false statement material" and "does excision of the false statement effect (sic) the determination of probable cause?" In the government's view the answer is no, requiring denial of defendant's motion to suppress.

In *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), the Supreme Court announced the importance of truthful affidavits in seeking warrants:

> [A] warrant affidavit must set forth the particular facts and circumstances underlying the existence of probable cause, so as to allow the magistrate to make an independent evaluation of the matter. If an informant's tip is the source of information, the affidavit must recite "some of the underlying circumstances from which the informant concluded" that relevant evidence might be discovered, and "some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, ... was 'credible' or his information 'reliable'." Because it is the magistrate who must determine independently whether there is probable cause, it would be an unthinkable imposition upon his authority if a warrant affidavit, revealed after the fact to contain a deliberately or recklessly false statement, were to stand beyond impeachment.

438 U.S. at 165, 98 S.Ct. at 2681 (citations omitted).

Judge Goodstein found that the words "inside the premises" do not stand in isolation. Rather:

> The command of *Franks* is clear; by falsely stating the underlying circumstances from which the informant concluded that cocaine could be found inside the Crenshaw house, Perez manipulates the judicial process, for it is the magistrate, not Perez, who must determine if Martin could, with sufficient reliability, identify cocaine from the house next door. Perez' intentional falsehood strengthens the reliability of Martin's observations because she was "inside the premises" at the time. This is a foundational phrase; without it, the informant's observations simply materialize

from thin air, and the obvious question is: how does the informant know this? Being a reliable informant is not enough; a basis for the informant's statements must be established. Thus, any reference to the informant's observations is tainted, and the entire paragraph must be excised under a *Franks* analysis. The court finds that the remaining, untainted paragraphs of the affidavit are insufficient to establish probable cause to support the issuance of a search warrant for controlled substances at 2545 N. 24th Street.

Rec. at pp. 8–9. In sum, Judge Goodstein was unwilling to consider the remaining observations in paragraph 8 in a determination of probable cause because those observations were tainted by Perez' false statement.

In its objection to the recommendation, the government directs the court's attention to the third element of the *Franks* test: whether without the false statement, the remainder of the affidavit is insufficient to establish probable cause. The Seventh Circuit has stated that:

> [w]here a search warrant is challenged on the basis of alleged falsities contained in the affidavit, the appropriate procedure for the district court to follow is to review the affidavit without the challenged portions to determine whether the unchallenged portion by itself establishes probable cause for the warrant to issue.

*United States v. Muhammad,* 928 F.2d 1461, 1464 (7th Cir.1991) (*citing United States v. Johnston,* 876 F.2d 589, 592 (7th Cir.) *cert. denied,* 493 U.S. 953, 110 S.Ct. 364, 107 L.Ed.2d 350 (1989)). "An affidavit has made a proper showing of probable cause when it sets forth facts sufficient to induce a reasonably prudent person to believe that a search thereof will uncover evidence of a crime." *McNeese,* 901 F.2d at 592 (*citing Berger v. New York,* 388 U.S. 41, 55, [87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040] (1967)). "In deciding whether a search warrant is supported by probable cause, courts must use the flexible totality-of-the-circumstances standard set forth in *Illinois v. Gates,* 462 U.S. 213, 238 [103 S.Ct. 2317, 2332, 76 L.Ed.2d 527] (1983)." *McNeese,* 901 F.2d at 592.

The government argues that the court should only excise the false statement found in paragraph 8 and, in making a probable cause determination, consider the remaining truthful portions of paragraph 8. Specifically, the government contends that the remaining part of paragraph 8 states that a reliable informant observed a person inside the target premises in possession of cocaine, and that is what supports a finding of probable cause. Detective Perez testified that he reached the conclusion that the substance the informant observed was cocaine in consideration of the informant's extensive experience in the cocaine world and from the description of the cocaine given by the informant.

■ The government contends that Judge Goodstein erred in failing to address whether the remainder of paragraph 8, with the false statement set aside, and in light of the affidavit as a whole, is sufficient to establish probable cause. In reviewing Perez' affidavit to determine if probable cause exists, the court is limited to the information actually presented to Commissioner Brooks; not Perez' testimony at the suppression hearing. The court cannot consider information of what Martin indicated she had observed, which Perez chose not to include in the affidavit. *United States v. Davis,* 714 F.2d 896, 899 (9th Cir.1983) (the fact that probable cause did exist and could have been established by a truthful affidavit does not cure the defect).

■ In his recommendation, Judge Goodstein reasoned that Detective Perez' intentional falsehood served as a foundation to the informant's statements that she observed a black male in the premises with cocaine. Excising the falsehood leaves the informant's observational statements without foundation, and any reference to the observations is tainted such that the entire paragraph must be excised under a *Franks* analysis. Judge Goodstein then concluded that the remaining, untainted paragraphs of the affidavit are insufficient to establish probable cause. Rec. at pp. 8–9.

The magistrate remarked that the remaining statements of paragraph 8 are so "tainted" that *Franks* commands their removal from any probable cause determination. Although, the court does not agree with declining consideration of the remaining portions of paragraph 8, the court nonetheless reaches the same conclusion as Judge Goodstein. After careful examination of the remaining portions of paragraph 8 together with the balance of the affidavit, the court concludes that the affidavit is insufficient to establish probable cause.

In reviewing the facts and circumstances of this case, it is apparent to the court that Perez' conduct is, at best, the product of the exercise of extremely poor judgment and lack of attention to detail. On the one hand, Perez admits that his statement that the "informant was inside the premises" was false, yet on the other hand, he testified that it was his understanding that Commissioner Brooks would construe the statement to mean that the possessor of the cocaine was inside the premises, but not that the informant was inside, such that he did not believe the statement to be false. This explanation is simply untenable.

Furthermore, although Perez admits that he knew that his statement was false, the fact that he approached Assistant District Attorney Arieff, with his affidavit containing a false statement, and sought review and approval, makes his conduct all the more suspect. If he knew the statement in paragraph 8 was false and yet sought issuance of the warrant without its mention, why did he not go directly to Commissioner Brooks to seek the warrant? Instead, by approaching Arieff, it appears as though Perez was seeking implicit approval of his improper conduct from another officer of the court. According to Perez, that is exactly what he received, such that he sees nothing inappropriate in his actions. In the court's view, such a scenario totally undermines Fourth Amendment protections which in the final analysis are entrusted to the judicial process, not the cop on the beat.

Moreover, Detective Perez' conduct before Commissioner Brooks is equally troubling. Instead of providing the Commissioner with a truthful affidavit regarding the confidential informant's location and subsequent observations, or supplementing the content of the

affidavit with testimony in the presence of a court reporter which would have allowed the Commissioner to make a fully informed probable cause determination, Perez chose to hide behind his untruthful sworn affidavit. In effect, Perez removed the probable cause determination from the Commissioner by his own hand.

In finding a lack of probable cause, a review of the factual record is instructive. After receiving information from the informant, Perez prepared the affidavit in support of the warrant using all of the language in the preprinted form with the exception of paragraphs 11, 13, 14 and 15 which were crossed out as not applicable. He made a conscious decision to use the balance of the preprinted language in his affidavit, including "informant was inside the premises." He chose to include this false statement and not to include other relevant underlying circumstances upon which the informant made her observations. Thus, when paragraph 8 is read in context, as prepared by Perez, clearly the foundation for Martin's observations was the preceding false statement, "informant was inside the premises." If the falsehood is excised from the affidavit, the remaining observations by Martin have no foundation to strengthen her observations, and are nothing more than a conclusion that John Doe possessed cocaine. The balance of the affidavit does not indicate how she knows this, nor for that matter from where her observation(s) was made or the distance from which her observation(s) was made, the duration of her observation(s), whether her view was clear or obstructed, or whether she had the ability to see and identify the substance as cocaine. In short, paragraph 8, even without the false statement, is insufficient to establish probable cause under a *Franks* analysis. It does not recite "some of the underlying circumstances" from which the informant concluded that cocaine might be discovered, nor does it recite "some of the underlying circumstances" from which the judicial officer could sufficiently conclude that the informant was credible and her information reliable. In short, a review of the remaining paragraphs of the affidavit demonstrate that they too are insufficient to establish probable cause.

The court is cognizant of the fact that Perez made a conscious decision to manipulate the judicial process, presumably to protect an informant. To be sure however, alternative methods to accomplish an otherwise laudable goal were readily available to Perez. This circuit recognizes that courts have for a long time supervised the privilege to withhold information important to the safety of an informant, *United States v. Danovaro,* 877 F.2d 583, 588 (7th Cir.1989); *citing In re Quarles,* 158 U.S. 532, 535–36, 15 S.Ct. 959, 961, 39 L.Ed. 1080 (1895); *Vogel v. Gruaz,* 110 U.S. 311, 316, 4 S.Ct. 12, 14, 28 L.Ed. 158 (1884), but lying to a judicial officer under oath is, unequivocally, not an acceptable alternative to withholding information.

Perez testified that he does not recall requesting that this affidavit be sealed, and he believes that there is no such procedure, that affidavits become a matter of public record. Under Wisconsin law, affidavits in support of a warrant are only made public after the search warrant is executed. Section 968.21, Wis.Stats. However, in this circuit, several acceptable alternatives exist to protect both the rights of the defendant and of the informant. Some permissible options and their inherent risks have been proposed by the Seventh Circuit:

> [The person drafting the application and affidavit may (1) ] withhold enough information to guarantee the informant's safety, but risk a decision denying the application (worse, an order suppressing the evidence at trial after the judge grants the application on an insufficient record); (2) they may include enough information to give the judge a clear view of the investigation and the need for the wiretap, and if in retrospect this disclosure is too much for the informant's safety, they may forego use of the interceptions at trial (or hope that the Witness Protection Program can secret the informant—an expensive and occasionally ineffectual expedient).... (3) the drafters may include in the affidavit facts they think would assist the court in deciding, then withhold from the defendant information that is both dangerous to the informant and unnecessary to sustain the warrant. That is, they may choose to defend their warrant without relying on the re-

dacted information, just as they could forego reliance on information challenged as false and so avoid an adversary hearing into facts behind the application.... we need not decide if there is a fourth option: to redact information that is both essential to the validity of the warrant and deadly to the informant, and rely on the prosecutor's summary of the redactions plus in camera inspection to test the adequacy of the affidavit.

The line between the third option (which we think fully protects the accused's rights) and the fourth (which we reserve for another day) is blurry, to be sure.

*United States v. Danovaro,* 877 F.2d at 588.

In this case, when Perez met with Commissioner Brooks and made his presentation, he should have discussed his concerns with her in an effort to reach a common accord which would satisfy defendant's constitutional concerns, while at the same time, protect the interests of the informant. By concealing his concerns, Perez consciously disregarded the Commissioner's function in balancing the constitutional concerns with the safety of the informant. Detective Perez' conduct in this instance simply does not pass muster. His testimony only buttresses the observation that he was trying to manipulate the judicial process and usurp the Court Commissioner's function to examine whether the informant's observations from a house next door, perhaps twenty feet away, through two sets of windows, would be sufficient to establish probable cause.

The court does not reach its conclusion unmindful of the fact that the search warrant turned up evidence of unlawful activity. However, the court is in full agreement with Judge Goodstein that no law enforcement officer, however well-intentioned, may subvert the constitutional requirement of a warrant supported by oath or affirmation by recklessly disregarding the truth. To borrow the words of the Seventh Circuit in *United States v. Cortina,* 630 F.2d 1207, 1213 (7th Cir.1980), when Perez recklessly disregarded the truth in his sworn affidavit, he committed two offenses: one against the constitutional guarantee against unreasonable searches, and a second against the judicial system.

For the reasons stated above, I conclude that the court's responsibility to uphold the integrity of the judicial system requires the adoption of the magistrate's well-reasoned recommendation and the suppression of all the evidence resulting from the search. Finally, having determined that suppression of the evidence is appropriate under *Franks,* the court need not reach Crenshaw's alternative grounds for suppression. Therefore,

**IT IS ORDERED** that defendant Crenshaw's motion to suppress the evidence obtained from the search of the premises at 2545 N. 24th Street, Milwaukee, Wisconsin, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that defendant Crenshaw's motion to suppress evidence obtained from his vehicle, a 1991 Ford Explorer, derivative to the search of the premises at 2545 N. 24th Street, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that defendant Crenshaw's motion to suppress his statements obtained during the search of the premises at 2545 N. 24th Street, be and the same is hereby **GRANTED**.