Bryan **HINNEN**, et al., Plaintiffs–Appellants,

v.

Thomas E. **KELLY** and other Unknown Named Agents of the U.S. Drug Enforcement Administration, Defendants–Appellees.

No. 92–2111.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 10, 1992.

Decided May 5, 1993.

As Amended on Denial of Rehearing and Rehearing In Banc June 18, 1993.

---

Gary L. Morris and Bryan Hinnen (argued), Peoria, IL, for plaintiffs-appellants.

James A. Lewis, Asst. U.S. Atty., Office of the U.S. Atty., Springfield, IL (argued), for defendant-appellee.

Before COFFEY and MANION, Circuit Judges, and WOOD, JR., Senior Circuit Judge.

HARLINGTON WOOD, Jr., Senior Circuit Judge.

A district court held defendant Agent Kelly, a Special Agent for the Drug Enforcement Administration ("DEA"), was immune from a civil suit filed in response to a search of plaintiff Bryan Hinnen's home. For the reasons given below, we affirm.

### I. BACKGROUND

Bryan Hinnen's home at 412 East Melbourne Avenue, Peoria, Illinois, was searched pursuant to a warrant on March 14, 1990. The two other plaintiffs, Ruth Hinnen, mother of Bryan, and Jon Belt were also present when the search was done. Bryan Hinnen filed his complaint on December 17, 1990, and the two other plaintiffs joined an amended complaint on March 15, 1991. A second amended complaint was filed on March 21, 1991. The plaintiffs allege Kelly and other unknown named agents of DEA violated their federal right to privacy, their federal right to be free from unreasonable searches and seizures, and their Illinois right to privacy. In essence, they sought money damages for the unreasonable search of the house at 412 East Melbourne Avenue.

According to information from an anonymous letter, two of the plaintiffs were part of a drug conspiracy in which marijuana is smuggled from Mexico to Tucson, Arizona, where it is then distributed to Peoria, Illinois. The anonymous letter, postmarked February 9, 1990, and mailed to the United States Marshall in Peoria who turned it over to DEA, was three pages in length and was the basis for three search warrants of three different residences. The letter described the persons involved in the drug ring in detail.

In his affidavit in support of the application for search warrants, Agent Kelly paraphrased six paragraphs from the anonymous letter and set forth the corroborating information from the ensuing investigation. Kelly also stated where information in the letter was incorrect or where information could not be corroborated.

The information that was corroborated included telephone numbers, street addresses, car license plates and registration, and utility records. The letter also stated that several identified people had criminal records which were confirmed and that a package had been mailed by United Parcel Service to Tucson, Arizona, from Peoria, Illinois. The incorrect information provided by the informant included other telephone numbers and incomplete addresses. Additionally, certain information concerning several individuals was unable to be confirmed.

On the basis of this anonymous letter, and the subsequent investigation, three residences were identified to be searched. One of them was 412 East Melbourne Avenue where Specialty Publishing Company is located. The letter stated that Bryan Hinnen

operated Specialty Publishing Company as a front for the drug organization. Bryan allegedly used money from his mother Ruth Hinnen to purchase the marijuana. Jarold Skinner and Dave Barrett lived at the two other residences identified in the warrant application.

A magistrate found probable cause and issued three search warrants for three different residences, including 412 East Melbourne Avenue, on March 12, 1991; those residences were searched on March 14. One thousand four hundred seventy dollars was seized from 412 East Melbourne. Two people were indicted who lived at the other two searched locations. Jarold Skinner pleaded guilty to possession of marijuana with the intent to distribute. In *United States v. Skinner,* 972 F.2d 171 (7th Cir.1992), we held the district court correctly found the search warrant for Skinner's residence was not supported by probable cause, but that the good faith exception to the exclusionary rule for violations of the Fourth Amendment permitted the use of evidence seized as a result of the illegal search. No charges were brought against any of the plaintiffs in the present case.

Kelly asserted immunity as an affirmative defense in his answer to the second amended complaint. He moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b) or alternatively for summary judgment under Federal Rule of Civil Procedure 56 on qualified immunity grounds.

The district court granted his motion to dismiss, denying his motion for summary judgment, on February 19, 1992. The district court found the search warrant for 412 East Melbourne was not supported by probable cause. But the court found the law on probable cause was in a state of flux at the time of the magistrate's issuance of the warrant, and therefore, Kelly was entitled to qualified immunity since plaintiffs' rights were not clearly established at the time of the search.

## II. STANDARD OF REVIEW

■ We review the district court's grant of a motion to dismiss *de novo. Midwest Grinding Co., Inc. v. Spitz,* 976 F.2d 1016, 1019 (7th Cir.1992). We must accept as true all well pleaded factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiffs. *Scott v. O'Grady,* 975 F.2d 366, 368 (7th Cir.1992).

## III. ANALYSIS

■ Government officers performing discretionary functions are shielded from civil liability unless their actions violate clearly established statutory or constitutional rights of which a reasonable officer would have known. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). This immunity protects all but "the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986). Reasonable mistakes are permitted without personal liability resulting. *Anderson v. Creighton,* 483 U.S. 635, 641, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987); *Malley,* 475 U.S. at 343, 106 S.Ct. at 1097. The purpose of this immunity is to allow officers to do their public business without the burden and distraction of possible lawsuits and to allow officers to reasonably anticipate when their conduct could give rise to civil liability. *Anderson,* 483 U.S. at 646, 107 S.Ct. at 3042; *Harlow,* 457 U.S. at 814, 102 S.Ct. at 2736.

■ A clearly established right is one that is established in a particularized sense rather than a general one like the Fourth Amendment's right to be secure against unreasonable searches. *Anderson,* 483 U.S. at 640, 107 S.Ct. at 3039; *Schertz v. Waupaca Co.,* 875 F.2d 578, 583 (7th Cir.1989). It is an objective fact-specific question which depends upon the clearly established law at the time. *Mitchell v. Forsyth,* 472 U.S. 511, 535, 105 S.Ct. 2806, 2820, 86 L.Ed.2d 411 (1985). While the identical factual scenario may not already have been legally decided, an officer's action must be considered in light of the particular circumstances he or she faced. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3039; *Malley,* 475 U.S. at 345, 106 S.Ct. at 1098; *Mitchell,* 472 U.S. at 535 n. 12, 105 S.Ct. at 2820 n. 12. "Once the defendant's actions are defined or characterized according to the specific facts of the case this characterization

is compared to the body of law existing at the time of the alleged violation to determine if constitutional, statutory, or case law shows that the now specifically defined actions violated the clearly established law." *Rakovich v. Wade,* 850 F.2d 1180, 1209 (7th Cir.) (en banc), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988).

 A right is not clearly established if officers of reasonable competence could disagree on the issue. *Malley,* 475 U.S. at 341, 106 S.Ct. at 1096. Immunity is intended to protect officers from any objectively reasonable decisions, including those that are wrong. *Id.* at 345, 106 S.Ct. at 1098. But when a magistrate has found probable cause and issued a warrant, an officer may not substitute the magistrate's judgment for his or her own if "a reasonably well-trained officer would have known that his [or her] affidavit failed to establish probable cause and that he [or she] should not have applied for the warrant." *Id.*

Because immunity is designed to protect officers from suit, the Supreme Court has often indicated that the question of immunity should be resolved at the early stages of a lawsuit as much as possible. *Anderson,* 483 U.S. at 646 n. 6, 107 S.Ct. at 3042 n. 6; *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815; *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738. "*Harlow* thus recognized an entitlement not to stand trial or face the other burdens of litigation, conditioned on the resolution of the essentially legal question whether the conduct of which the plaintiff complains violated clearly established law.... [I]t is effectively lost if a case is erroneously permitted to go to trial." *Mitchell,* 472 U.S. at 526, 105 S.Ct. at 2815. The issue of qualified immunity is one for the court and not the jury to decide. *Rakovich,* 850 F.2d at 1202; *Llaguno v. Mingey,* 763 F.2d 1560, 1569 (7th Cir.1985) (en banc).

 The court below found the law was not clearly established as to whether Kelly had sufficient probable cause for a search warrant at the time of the application for the warrant. Kelly's application relied solely upon the anonymous letter and the corroborated information. When the warrant was issued, the Supreme Court's definitive case

concerning probable cause from anonymous informants was *Illinois v. Gates,* 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). But by the time of Kelly's motion to dismiss, the Court had decided *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990), in which the Court emphasized the importance of an anonymous informant's ability to predict a person's future behavior. *id.* at 332, 110 S.Ct. at 2417. Thus when assessing probable cause, it may not be enough to just corroborate information from an anonymous source; under the totality of the circumstances approach, predicted future behavior which occurs may also be required for a finding of probable cause.

In *United States v. Skinner,* we discussed these two Supreme Court decisions: "[U]ntil *Alabama v. White* was decided, the question of precisely what was required in the way of corroboration of an anonymous tipster's factual assertions was unsettled." *United States v. Skinner,* 972 F.2d 171, 176 (7th Cir.1992). "While *Gates* discussed the import of predictions of future behavior in the determination of probable cause, . . . the importance of an informant's ability to predict future conduct was not fully crystallized until the Supreme Court decided *Alabama v. White.*" *Skinner,* 972 F.2d at 175 (citation omitted). In *Skinner,* both the government and the defendant agreed the warrant was not supported by probable cause, and we affirmed the district court's conclusion that the officers believed in good faith there was probable cause for the search since the law on probable cause was in a state of flux at the time of the search. *Id.* at 173, 176.

The same district judge whose similar decision we affirmed in *Skinner* ruled the law concerning probable cause did not clearly establish a right which Kelly could reasonably have been expected to know at the time of the search. The judge stated it was a close legal question whether the warrant was supported by probable cause and in light of *White,* the judge was convinced that because of the lack of any predictive behavior by the anonymous informant, Kelly did not have probable cause for the warrant. But since *White* was decided after the search, Kelly was immune from liability for violating plain-

tiffs' constitutional rights because they were not clearly established at the time of the search. The judge held the importance of predicted future behavior for finding sufficient indicia of reliability to justify a search was not clearly established at the time of the search.

■ We affirm the district court's dismissal of plaintiffs' suit because of Kelly's qualified immunity. Qualified immunity is evaluated under the same objective reasonableness standard used in the good faith inquiry of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). *Malley,* 475 U.S. at 344–45, 106 S.Ct. at 1098; *Leon,* 468 U.S. at 922 & n. 23, 104 S.Ct. at 3420, n. 23. The standard for the good faith exception is whether the officer's reliance on the magistrate's decision is objectively reasonable. *Id.* Thus we are properly guided by our earlier analysis in *Skinner* in which we stated the importance of predicted future behavior was not fully·crystallized until the Supreme Court's decision in *White.*

Kelly's belief that the warrant was supported by probable cause based upon the anonymous letter and all the corroborated information was objectively reasonable although legally incorrect. His investigation corroborated a significant amount of details in the letter; such a significant amount of corroboration can indicate that if the informant is truthful on these points, the informant is also likely telling the truth on the other uncorroborated points. *See Gates,* 462 U.S. at 243–44, 103 S.Ct. at 2335; *Draper v. United States,* 358 U.S. 307, 313, 79 S.Ct. 329, 333, 3 L.Ed.2d 327 (1959). The investigation confirmed that an individual named in the letter did own the specified auto shop in Tucson, Arizona. Of the packages mentioned in the letter, one was sent by United Parcel Service to that auto shop from Peoria, Illinois, but the other two were not traced. Several individuals' names, addresses, utility services, and criminal records were specified in the letter and corroborated, including Bryan Hinnen's Specialty Publishing Company. Additionally the letter also correctly described the relationships between the named individuals.

This information was not incriminating or necessarily indicative of criminal activity, and much of it was available from public records. But some information, the criminal records, mailing records, and utility records, was less readily accessible, suggesting the veracity of the letter's information. Thus Kelly's warrant application was not so lacking in indicia of probable cause as to render his belief in it objectively unreasonable. *See Malley,* 475 U.S. at 344–45, 106 S.Ct. at 1098. As the Supreme Court stated: "We have frequently observed, and our many cases on the point amply demonstrate, the difficulty of determining whether particular searches and seizures comport with the Fourth Amendment." *Anderson,* 483 U.S. at 644, 107 S.Ct. at 3041.

Moreover, when we have already found another warrant supported by the same anonymous letter and corroborated information was not supported by probable cause, but the officers' belief of probable cause was objectively reasonable, we will not find here that Agent Kelly unreasonably violated a clearly established constitutional right. *See Malley,* 475 U.S. at 344–45, 106 S.Ct. at 1098; *Leon,* 468 U.S. at 922 & n. 23, 104 S.Ct. at 3420 & n. 23. We cannot hold that another reasonable officer in the defendant's same position could not have doubted that he was violating plaintiffs' constitutional rights by executing the search warrant. *Colaizzi v. Walker,* 812 F.2d 304, 309 (7th Cir.1987).

## IV. CONCLUSION

Plaintiffs' other argument concerning the district court's denial of their motion to add additional defendants is unconvincing. The district court correctly dismissed plaintiffs' suit with prejudice based upon Kelly's qualified immunity the month before plaintiffs' motion and properly denied plaintiffs' motion as an exercise of its discretion. The district court's judgment is, therefore, affirmed.

AFFIRMED.