Genevieve SAFFELL, Plaintiff–
Appellee,

v.

Carrie L. CREWS, Inspector # 18497,
Defendant–Appellant.

No. 98–4255.

United States Court of Appeals,
Seventh Circuit.

Argued May 19, 1999.

Decided July 6, 1999.

Gregory J. Schlesinger (argued), Schlesinger & Krasny, Chicago, IL, for Plaintiff–Appellee.

Carole J. Ryczek (argued), Office of the United States Attorney, Civil Division, Chicago, IL, for Defendant–Appellant.

Before WOOD, JR., FLAUM, and MANION, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

Defendant Carrie L. Crews, a veteran Customs Service inspector, appeals a judgment for $25,000 entered personally against her in a claim under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), brought by plaintiff Genevieve Saffell. The controversy concerns a strip search of Saffell by Crews upon the arrival of Saffell back in the United States from a trip to Jamaica. The district court in a bench trial after several amendments entered final judgment for the United States on Saffell's common law tort claim against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 2671–80; for Saffell on the *Bivens* claim for damages against Crews personally in the amount of $25,000; but against Saffell on her prayer for punitive damages against Crews. Crews appeals. There is no cross appeal by Saffell. Some background information is necessary, but we need not detail all the evidence for our purposes.

At the time of this incident, in November 1995, Crews, a veteran of twelve years with the Customs Service, was working as a roving inspector in the international terminal at O'Hare International Airport. Her job was to assist with interviewing and processing of arriving international passengers and their baggage and, in particular, to help intercept drug smugglers.

Saffell, a naturalized citizen residing in Wisconsin, arrived back in the United States on November 1, 1995, after spending a week in Jamaica. Crews was notified that a narcotics detection dog had alerted to Saffell's luggage. When Saffell retrieved her luggage at the baggage carousel, Crews asked Saffell to follow her to a search area, which Saffell did. A patdown search by Crews revealed a bulge under Saffell's clothes in the most intimate area of her body, a place where drugs are sometimes known to be secreted by women. A partial strip search followed the patdown but no drugs were found.

Crews' version of the strip search, much more limited in scope than Saffell's version, was accepted by the district court. Saffell's account was found not to be truthful. Had Saffell's version alleging extreme intimate personal contact and intrusion been accepted by the district court this case could have been more difficult. The district court found that Crews was justified in performing the patdown search which disclosed the bulge in Saffell's clothing. The court noted the canine alert as justification together with the fact that Saffell had just arrived from a country with the reputation of being a source of narcotics where Saffell had been three times in a little over a year. Upon questioning, Saffell declined argumentatively to discuss the trip or her personal situation with Crews. As it turned out, had Saffell communicated her reasonable explanations to Crews that would have helped her. However, the district court concluded that although the original patdown search was justified, Crews lacked reasonable suspicion to proceed further and to perform the partial strip search. The bulge and the other surrounding circumstances were not considered sufficient to justify the strip search.

Prior to trial, Crews and two other Customs inspectors initially named as defendants filed a motion for summary judgment on the basis of qualified immunity. That motion was granted with respect to the other two inspectors, but denied as to Crews. To reach that result the district court credited Saffell's account of the strip search, an account which it later rejected at trial. However, the district court did not revisit its first immunity ruling as to Crews when it drastically amended its factual strip search findings later at trial.

We review *de novo* the trial court's determination of reasonable suspicion to perform a search which is also the same standard we use to review the qualified immunity issue. *Elder v. Holloway*, 510 U.S. 510, 516, 114 S.Ct. 1019, 127 L.Ed.2d 344 (1994); *Humphrey v. Staszak*, 148 F.3d 719, 725 (7th Cir.1998). The district court's findings of fact, however, are reviewed only for clear error. *United States v. Ward*, 144 F.3d 1024, 1030 (7th Cir.1998). Because O'Hare is an international gateway into the United States, arriving passengers are subject to searches in the same category as searches at the border. *United States v. Johnson*, 991 F.2d 1287, 1290 (7th Cir.1993). The government under that standard is allowed a little more leeway "pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country." *United States v. Ramsey*, 431 U.S. 606, 616, 619, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977). In those searches, the rights of the government compared with the privacy rights of international travelers are "more favorable to the government." *United States v. Montoya de Hernandez*, 473 U.S. 531, 539–40, 105 S.Ct. 3304, 87 L.Ed.2d 381 (1985).

We fully agree with the district court that there was justification for the initial search, and finding no clear error, we accept the district court's final factual findings later made at trial about the limited extent of the strip search. We therefore disregard the district court's findings of fact on summary judgment which findings were later rejected by the district court. We must disagree, however, with the district court's holding that Crews was

not entitled to qualified immunity. First of all, considering all the facts and circumstances in this case we see no Fourth Amendment violation of the right to be secure from unreasonable searches and seizures. We believe that the partial strip search was fully justified. The Customs Service has had experience with clever and devious smugglers including ways in which the body can be and is used to secrete narcotics. In any event, as we discuss below, we find Crews to be entitled to qualified immunity on Saffell's *Bivens* claim.

■ It is recognized that an action for damages is appropriate against public officials when a person's constitutional rights have been violated by those officials. *Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Such a cause of action, however, is subject to limitations because, as explained in *Anderson*, it could "unduly inhibit officials in the discharge of their duties." *Id.* In *Hinnen v. Kelly*, 992 F.2d 140, 142–43 (7th Cir.1993), we explored the parameters of qualified immunity which we reiterate only briefly here. Basic is that government officials performing discretionary functions are not subject to liability unless their actions violate clearly established statutory or constitutional rights then known to a reasonable officer. That clearly established right must be one established in a particularized sense. This requires more than a general violation of the Fourth Amendment. "It is an objective fact-specific question which depends upon the clearly established law at the time." *Id.* at 142 (citation omitted). It is not necessary for liability, however, that an identical factual situation had been legally decided adverse to the officer. The officer's actions are to be considered in light of the particular circumstances the officer faced at the time. When the specific facts in the particular instance are determined then those facts are to be compared to the law existing at the time to see if clearly established law was violated. "A right is not clearly established if officers of reasonable competence could disagree on the issue." *Id.* at 143 (citation omitted). Officers under this standard may be protected from liability for objectively reasonable decisions, even if wrong. Therefore, as we held in *Jones v. City of Chicago*, 856 F.2d 985, 994 (7th Cir.1988), qualified immunity is not forfeited unless "no reasonable officer could have mistakenly believed" that the conduct was unlawful.

■ In the present case, Crews is entitled to qualified immunity if a reasonable officer could have rationally believed that the strip search was not unlawful in light of clearly established law and the information she possessed at the time. *See Hunter v. Bryant*, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991). The district court found that Crews did not knowingly violate any law, but was following Customs policy as she understood it. Even if Crews made a mistake, which we do not think she did, qualified immunity provides "ample room for mistaken judgments" and protects government officers except for the "plainly incompetent and those who knowingly violate the law." *Id.* at 229, 112 S.Ct. 534. Crews, an experienced Customs inspector, was neither incompetent, nor did the district court find that she intentionally violated any law.

■ Various cases are cited by plaintiff to support the denial of qualified immunity with which generally we do not disagree. The Fourth Amendment protects personal privacy and dignity against unwarranted intrusion by the state. *Schmerber v. California*, 384 U.S. 757, 767, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). The issue is, however, whether the privacy intrusion was "unwarranted," and in this case based on the facts as found by the district judge at trial it was not unwarranted. Plaintiff also cites *Johnson*, 991 F.2d at 1291, which holds that when a border search becomes non-routine the Customs official needs reasonable suspicion to justify the search. That suspicion requires a particularized and objective basis for suspecting the person is

smuggling contraband. The *Johnson* search was found reasonable under the circumstances in that case. In the present case there was a sufficient objective basis, including the canine alert and the revelations of the patdown search, as well as other factors, to fully justify the partial strip search. We find no authority holding conduct similar to Crews' actions to be unlawful in 1995 or since. Crews could not reasonably have known that in doing her duty and following the policies of Customs she would be violating any law. This was not an easy case factually for the district court to sort out. We only disagree with the legal conclusion which was reached and, therefore, hold that Crews is entitled to qualified immunity.

It was no doubt a very disagreeable and embarrassing experience for Saffell even accepting Crews' account of the partial strip search, but that alone coupled with Saffell's later determined innocence is not enough to hold Crews personally liable. She was only doing her duty as she saw it in line with Customs policy and not contrary to any other known applicable legal determination. Our view of this case does not mean, however, that Customs agents have free license to exceed what is reasonable and proper under the law in order to accomplish their important responsibilities. They must be sensitive to their intrusive powers and not abuse and misuse those powers so as to adversely affect travelers unjustly and unnecessarily. In this case we have no doubt about Saffell's innocence, but that is not determinative.

Therefore, we must reverse the denial of qualified immunity to Crews and vacate the damage award against her. The case against Crews is dismissed.

REVERSED.