In the
United States Court of Appeals
For the Seventh Circuit

No. 99-2965

Horace E. Smith, II, M.D.,

Plaintiff-Appellant,

v.

City of Chicago, a municipal corporation,
Milton M. Scott, employee of the Police
Department of the City of Chicago,
a municipal corporation and Randall Darlin,
employee of the Police Department of the
City of Chicago, a municipal corporation,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 97 C 763--Harry D. Leinenweber, Judge.

Argued May 31, 2000--Decided March 6, 2001


   Before Flaum, Chief Judge, and Bauer and
Harlington Wood, Jr., Circuit Judges.

   Bauer, Circuit Judge.  Smith sued defendants, in
relevant part, for unreasonable search and
seizure, use of excessive force, and battery,
arising from a May 1996 traffic stop. After some
to and fro-ing, the case is before us again, so
a thumbnail sketch of the facts and case history
is needed.

   The district court entered summary judgment in
defendants' favor on all counts, and Smith
appealed. Defendants motioned this Court for a
limited remand to allow the district court to
listen to an audio tape recording of the
conversation between the officers and the
dispatcher during this incident. A transcript of
the conversation was already part of the record.
The tape became critical, however, because a
dispute arose as to whether the officers had
played their siren while following Smith. Smith
is adamant that he did not hear the siren. He
claims that he did not know that the men in the
car trailing him were police officers because
they were plain-clothed and drove an unmarked
car. The officers contend that they followed
Smith after he had violated a traffic law and
played the siren, but that Smith refused to pull

over. Smith, although driving within the speed limit, did not stop for twelve blocks until marked police cars pulled in front of him. On December 2, 1999, we granted defendants' motion, ordering the district court to consider: (1) whether a copy of the tape had been tendered to it; and (2) if a genuine issue of material fact existed as to whether the officers played their siren prior to the investigative stop.

On February 24, 2000, defendants filed a memorandum in light of our remand order asking the district court to consider the tape in deciding on summary judgment. The defendants noted that Smith objected to its admission because there were gaps and pauses in it and it was unclear whose siren was audible on the tape. In response, defendants pointed to the following: (1) an affidavit signed by Officer Darlin, one of the arresting officers, swearing that he had listened to the tape, that the voice on it was his, and that the siren heard on it sounded like the one from the car on that day; (2) an affidavit signed by Thomas Dugan, an employee of the City of Chicago Office of Emergency Communications, swearing that the office records all conversations between police and dispatchers and maintains these tapes in its ordinary course of business, that he had listened to the tape, that the office had made the tape from a master tape in its regular business practice, and that the recording had no "gaps" or "unexplained pauses," and that the siren had to have come from the officers' car since it was only audible when the officers spoke; and (3) deposition testimony of Officer Scott, another one of the arresting officers, recounting that Darlin had activated the siren while following Smith and that it remained on for twelve blocks. Defendants argued that Smith offered no evidence creating a genuine issue of material fact as to whether the siren was played. The only evidence Smith asserted was that he did not hear the siren. On March 1, 2000, Smith filed a memorandum in response. Smith argued that the tape was inadmissible because it had not been tendered to the court, the tape had gaps and pauses, and no foundation or authentication of the tape was presented.

The district court's order, issued on March 9, 2000, which strictly adhered to the language of our December 2nd order, found that the tape had not been tendered to the court, and thus could not be considered as evidence. However, based on the depositions and affidavits, the district court found that the siren had been played. The district court concluded that Smith's mere assertion to the contrary was insufficient to raise a genuine issue of material fact. Therefore, the district court again granted summary judgment in defendants' favor. Smith

appealed.

Upon reading the district court's order, we realized the ambiguity in our December 2nd order and set out to clarify it. On June 27, 2000, we issued an order directing the district court to supplement the record with the tape, listen to it, and redetermine the grant of summary judgment. Pursuant to this clearer directive, the district court, on October 12, 2000, issued an order stating that it had supplemented the record with the tape and listened to it. The court noted that the tape contained a recording of the conversation between the officers and dispatcher regarding a car that refused to pull over. Throughout the tape, a siren is clearly audible as the officers speak. (We too have listened to the tape and agree with the district court that a siren is clearly playing as the officers are speaking.) The district court noted that the defendants had offered the tape as authentic and had indicated that the siren was theirs. The court again found that no genuine issue of material fact existed since Smith merely asserted that he did not hear the siren and offered no evidence that the tape was not what the defendants claimed it to be. Therefore, the district court decided that summary judgment was still warranted in defendants' favor.

Today we consider two issues raised by Smith. First, he raises questions about the tape's authenticity and admissibility, and second, he alternatively argues that even if the tape was properly admissible, it did not eliminate disputes as to genuine issues of material fact.

I. Admissibility and Authenticity of the Audio Tape Recording

In granting summary judgment, a "'court may consider any material that would be admissible or usable at trial,' including properly authenticated and admissible documents or exhibits." Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000) (quoting Aguilera v. Cook County Police & Corrs. Merit Bd., 760 F.2d 844, 849 (7th Cir. 1985) and citing Martz v. Union Labor Life Ins. Co., 757 F.2d 135, 138 (7th Cir. 1985)). Audio tape recordings are generally admissible as evidence whether in original or duplicate form. See United States v. Carrasco, 887 F.2d 794, 802 (7th Cir. 1989). However, a duplicate may be inadmissible if "a genuine question is raised as to the authenticity of the original . . . ." Fed. R. Evid. 1003(1). In determining authenticity we follow Fed. R. Evid. 901(a), which requires "evidence sufficient to support a finding that the matter in question is what its proponent claims." United States v.

Boyd, 208 F.3d 638, 644 (7th Cir. 2000). Beyond these basic parameters, "we have eschewed any formalistic approach to the admission of tape recordings or copies thereof." Stringel v. Methodist Hosp. of Indiana, Inc., 89 F.3d 415, 420 (7th Cir. 1996).

   To authenticate a tape in a criminal case the government must prove by clear and convincing evidence that the tape is a true, accurate, and authentic recording of the conversation, at a given time, between the parties involved. See id. We have assumed, but not decided, that the proponent in a civil case for admission of a tape bears the same burden. See id. We decline to squarely decide the question again today, resting on the same assumption. Clear and convincing evidence of the truth, accuracy, and authenticity of a tape may be shown in two ways. The proponent may show the tape's chain of custody. See United States v. Brown, 136 F.3d 1176, 1181 (7th Cir. 1998). If no proof as to chain of custody is rendered, the tape may be admissible if a foundation as to the "'accuracy and trustworthiness of the evidence is laid.'" Id. (quoting United States v. Craig, 573 F.2d 455, 478 (7th Cir. 1977)). "In this circuit, the recollections of eyewitnesses to the events in question are sufficient to establish a foundation for the admission of tapes." Id. at 1182 (citations omitted).

   Our second remand ordered the district court to admit the tape into the record and consider it in its decision. In so doing, the district court found that the tape was authentic and admissible because the proponents laid a proper foundation. They did so by submitting both Darlin's affidavit, which included eyewitness statements identifying his voice and siren, and Dugan's affidavit, which included chain of custody statements about how the tape was recorded and handled in the office. Thus, based on these attestations, the district court appropriately shifted the burden to Smith to show inauthenticity, because once the foundation is laid by clear and convincing evidence, the opponent of admission has the burden to rebut. See United States v. Blakey, 607 F.2d 779, 787 (7th Cir. 1979). The district court properly found that Smith presented no evidence "to dispute that the recording is what the defendants claim[ed] it to be." Smith's only rebuttal is that he did not hear the siren, therefore there may have been a problem with the fidelity of the siren system or the siren was not played. Smith's contentions are merely "general, conclusory allegations based upon mere suspicions," which are not enough to rebut the proponent's foundation. Id. (quotation omitted). Stated

another way, "[m]erely raising the possibility (however hypothetical) of tampering is not sufficient to render evidence inadmissible." Brown, 136 F.3d at 1182 (citation omitted). Therefore, it was appropriate to admit the tape in determining summary judgment, and the district court correctly found that the tape was authentic and admissible. Smith raises an assortment of other arguments regarding the authenticity and admissibility of the tape, however, we decline to address them for they are without merit.

## II. Review of the Summary Judgment Grant

We review the district court's grant of summary judgment de novo, construing all facts and drawing all reasonable inferences from the record in the light most favorable to the nonmovant. Summary judgment is proper when the record reveals no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

### A. Unlawful Search and Seizure Claim

Smith claims that the officers violated his rights by searching him and the car's glove box, passenger compartment, and trunk. The district court held that the defendants were entitled to qualified immunity because a reasonable person would not find that the officers violated Smith's clearly established constitutional rights. Police officers are entitled to qualified immunity for actions taken during a stop or arrest "'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Rice v. Burks, 999 F.2d 1172, 1174 (7th Cir. 1993) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)). Qualified immunity is dissolved, however, if a plaintiff points to a clearly analogous case establishing a right to be free from the specific conduct at issue or when the conduct is so egregious that no reasonable person could have believed that it would not violate clearly established rights. See Saffell v. Crews, 183 F.3d 655, 658 (7th Cir. 1999).

The defendants acquired reasonable suspicion to conduct an investigatory stop of Smith when they believed that he had committed a traffic offense and then would not pull over for twelve blocks while the officers played their siren. When the dispatcher misinformed the officers that Smith had thirteen aliases it was reasonable for the officers to call Smith's identity into question. Furthermore, Smith could not produce proof of valid insurance for his car. Smith's arrest was

based on probable cause. Thus, the district court found that it was not contrary to established law for the officers to conduct a search incident to the arrest. The district court found, however, that the search of the trunk may have been unlawful if the officers did not have probable cause to believe the trunk contained contraband or evidence of a crime, but held that the law was not clear at the time of the incident such that a reasonable official would not have known that he or she may have been violating a clearly established right. See New York v. Belton, 453 U.S. 454, 460, 460-61 n.4 (1981) ("When a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile. . . . Our holding encompasses only the interior of the passenger compartment of an automobile and does not encompass the trunk."); United States v. Patterson, 65 F.3d 68, 70 (7th Cir. 1995) ("[A] vehicle may be searched without a warrant if there is probable cause to believe the car contains contraband or evidence of a crime. A search of an automobile based on probable cause lawfully extends to all parts of the vehicle in which contraband or evidence could be concealed, including closed compartments and trunks.") (quotations and citations omitted).

Smith's main contention is that such a search was unlawful because he committed a minor traffic violation. This contention is wholly wrong because it ignores many facts, namely Smith's refusal to pull over, his invalid proof of insurance, and the thirteen aliases he was said to have. All of these facts combined gave the officers probable cause to arrest him and conduct a search incident to that arrest. Therefore, the officers did not violate Smith's clearly established rights.

Smith also contends that a search was unnecessary because "a reasonable officer would have immediately known that he had pulled a physician and minister from his vehicle, and that Dr. Smith was not a threat and posed no danger." We disagree. Despite the fact that Smith is a minister and physician, the officers had probable cause to arrest and search him. Even though Smith was driving a church-owned car and had hospital records in the backseat, the officers were reasonable in disregarding these clues as to Smith's identity since they were informed, albeit incorrectly, by the dispatcher that he had thirteen aliases. Besides, to hold that the officers should have stopped searching Smith because he is a minister or physician would be sanctioning stereotyping of the most pernicious sort. We agree with, and affirm, the district

court's decision that the defendants are entitled to qualified immunity and summary judgment on this claim.

## B. Excessive Force Claim

Whether an officer used excessive force during an arrest is determined under the "objective reasonableness" standard. We assess whether an officer's actions were objectively reasonable "'in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" Graham v. Connor, 490 U.S. 386, 397 (1989). We consider "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight." Id. at 396. We balance the amount of force used in relation to the danger posed to the community or to the arresting officers. See Jacobs v. City of Chicago, 215 F.3d 758, 773 (7th Cir. 2000).

Smith asserts that he did not commit a traffic violation, he did not know that the men following him were police officers, and he did not hear the siren. However, these factual disputes are of no matter because under this standard we consider what happened from an officer's point of view and assess its reasonableness objectively. The officers' actions in this case were objectively reasonable. From the officers' vantage point, Smith committed a traffic violation, whereupon they followed him and played their siren (confirmed by the tape) to signal him to pull over, which Smith did not do for twelve blocks. When Smith was finally stopped by marked police cars, the officers pulled Smith out of the car, pinned his arms behind his back, slammed him against the hood of his car, and handcuffed him. A reasonable officer would have thought that Smith was trying to flee, thereby justifying the use of a higher degree of force to protect the community and the officers than that needed for someone who committed only a minor traffic violation. However, the officers' use of force here was not high, let alone excessive. The factual disputes raised by Smith are not material to his substantive excessive force claim as they rest upon his view of the incident. Not all factual disputes warrant the denial of summary judgment; only disputes as to facts material to the substantive claim require resolution by trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1985). Since any factual disputes are not material to the substantive claim, we affirm the district court's grant of summary judgment on this claim.

C. Battery Claim

A battery occurs when one "intentionally or knowingly without legal justification and by any means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3(a). A public employee is immune from liability while enforcing the law unless their acts are willful and wanton. See 745 ILCS 10/2-202. Conduct is willful and wanton when it "shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210.

The district court held that the evidence did not support a finding that Darlin's actions in effectuating the arrest were willful and wanton. The court reasoned that pulling a suspect from a car, pushing him against the car, and pinning his arms behind his back to handcuff him were all reasonable actions to take when arresting a potentially dangerous suspect. While ostensibly not pleasant, being handcuffed in this manner does not rise to the level of willful and wanton conduct. While determining whether one's actions are willful and wanton is a question of fact, the court determined that Smith's factual claims were insufficient to support his claim. We agree with the district court's grant of summary judgment on this basis.

Therefore, we find the admission of the audio tape recording appropriate and AFFIRM the grant of summary judgment in defendants' favor on all counts.