Gregory HALE, Plaintiff,

v.

Augustus SCOTT, Jr., Warden; Lana Wildman, Librarian; Gary Wyles, Lieutenant of Internal Affairs; and Donald N. Snyder, Jr., Director of Illinois Department of Corrections, Defendants.

No. 01–CV–3052.

United States District Court, C.D. Illinois.

March 17, 2003.

Gregory Hale, Chicago, IL, Pro se.

Michael J. McGee, Office of Illinois Attorney General, Springfield, IL, for Defendant.

### Order

BAKER, District Judge.

On January 28, 2002, all the plaintiff's claims were dismissed for failure to state a claim except for his claims that:

1) the discipline he received for insolence based on the content of his prison grievance violated his First Amendment rights;

2) he was transferred to another prison in retaliation for exercising his right of access to the courts or for helping others exercise their right of access to the courts; and,

3) defendant Wildman retaliated against the plaintiff for exercising his right of access to the courts by refusing him copies of necessary legal documents and/or otherwise hindering his use of the library.

Before the court is the defendants' motion for summary judgment [d/e 53], which is granted for the reasons below.

### Standards

A party moving for summary judgment must show, from the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, . . ." that there is no genuine issue of material fact and that the "moving party is entitled to judgment as a matter of law." *Outlaw v. Newkirk,* 259 F.3d 833, 837 (7th Cir.2001), *citing Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986);Fed. R. Civ. P.56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Herman v. National Broadcasting Co., Inc.,* 744 F.2d 604, 607 (7th Cir.1984), *cert. denied,* 470 U.S. 1028, 105 S.Ct. 1393, 84 L.Ed.2d 782 (1985). This burden can be satisfied by " 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. If such a showing is made, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e); *Outlaw,* 259 F.3d at 837. A nonmoving party cannot rest on its pleadings, but must demonstrate that there is admissible evidence that will support its position. *Tolle v. Carroll Touch, Inc.,* 23 F.3d 174, 178 (7th Cir.1994). Credibility questions "defeat summary judgment only '[w]here an issue as to a material fact cannot be resolved without

observation of the demeanor of witnesses in order to evaluate their credibility.'" *Outlaw*, 259 F.3d at 838, *citing* Advisory Committee Notes, 1963 Amendment to Fed.R.Civ.P. 56(e)(other citations omitted).

In determining whether factual issues exist, the court must view all the evidence in the light most favorable to the non-moving party. *Beraha v. Baxter Health Corp.*, 956 F.2d 1436, 1440 (7th Cir.1992). However, Rule 56(c) "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party there is no 'genuine' issue for trial." *Mechnig v. Sears, Roebuck & Co.*, 864 F.2d 1359 (7th Cir.1988). A "metaphysical doubt" will not suffice. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Disputed facts are material only if they might affect the outcome of the suit. *First Ind. Bank v. Baker*, 957 F.2d 506, 507–08 (7th Cir.1992). "Summary judgement is not a discretionary remedy. If the plaintiff lacks enough evidence, summary judgement must be granted." *Jones v. Johnson*, 26 F.3d 727, 728 (7th Cir.1994).

### Background and Facts

On June 30, 1999, during his incarceration at Lincoln Correctional Center ("Lincoln"), the plaintiff filed a grievance against an Officer Drone. [Complaint, d/e 5 at p. 4]. The grievance stated that Officer Drone failed to "call chow" in the mornings, dozed off during duty, talked on the phone excessively, and slandered the plaintiff's name by labeling him to other inmates as a complainer. The plaintiff characterized Officer Drone as unethical and unprofessional. The plaintiff further accused this officer of "fratilizing"[1] with inmates, including the plaintiff. He stated,

> Furthermore, I have observed C/O Drone badge # 138, Fratilizing with inmates and on two occasions with me. In which she told me that this is her third 90 days being assigned to Housing Unit 5B, and she must be doing something right, why she hadn't been moved. Rumor goes according to inmates that have been on the unit since she came, [Officer Drone] is screwing a lot of the Officer's on the midnight shift along with a few Sergeants and Lt's, etc.. Maybe C/O Drone had became to at ease with H.U. 5B and should be reassigned or put on days to enable her to review how to perform her job assignment when assigned to Housing unit.

[Grievance attached to Complaint, d/e 5, [sics not specifically identified]]. The plaintiff requested in his grievance that the administration discipline the officer, remove her from the unit or switch her to the day shift.

The grievance officer's response was "The allegations/accusation Mr. Hale cites in this grievance are quite serious in nature. The matter has already been referred to Internal Affairs for Investigation." Defendant Wyles (a lieutenant) interviewed the plaintiff, and on July 7, 1999, wrote a disciplinary report against the plaintiff accusing him of insolence for his grievance statements referring to the rumors about Officer Drone having sexual intercourse with other officers during her shift. Defendant Wyles' ticket stated that the plaintiff had admitted on interview that it was just a rumor which he had included because "he wanted to put everything he knew about Drone in the grievance." [Disciplinary Report dated

---

1. The court assumes the plaintiff means "fraternizing."

7/7/99, attached to Complaint]. The plaintiff stated in his deposition that defendant Wyles had asked him why he had included the statement in his grievance, and the plaintiff had replied, "I said no apparent reason. I was reporting the conduct and that was part of the conduct that I was aware of and I wanted to include that." [Plaintiff's Aff. p. 51. lines 8–11].

An Adjustment Committee Report attached to the plaintiff's complaint found the plaintiff guilty of insolence for stating in his grievance that the officer was "messing (screwing) around with staff members."[2] The Report states that the guilty finding was based on defendant Wyles' credibility and the plaintiff's admission that the accusations against the officer were only rumors. The plaintiff was demoted to C grade for 15 days and received segregation for 15 days.[3]

In a separate incident, the plaintiff alleges that he was transferred to Logan Correctional Center in retaliation for filing his grievances and lawsuits and/or acting as a jailhouse lawyer. Defendant Wildman (the librarian) allegedly refused to allow him to make photocopies of legal documents he needed to file his complaint in an action in Illinois Claims Court and otherwise hindered his library access, in retaliation for his filing grievances and lawsuits. The plaintiff admitted in his deposition that defendant Wildman allowed him to make photocopies when the plaintiff had enough money on the books.

The following facts are offered by the defendants with support in the record and are not disputed by the plaintiff. On October 7, 2000[4], Lincoln was transformed from a men's prison to an exclusively women's prison, medium security. The plaintiff was transferred from Lincoln on September 20, 2000, because of this transformation. The majority of male inmates at Lincoln were transferred to Logan Correctional Center or Dixon Correctional Center.[5] Approximately 260 inmates were transferred from Lincoln to Logan Correctional Center on or before October 7, 2000. The plaintiff admits that the transfer itself was not done in retaliation, but maintains that he was transferred to Logan rather than another minimum security prison in retaliation. At no time did Warden Scott contact the clinical service supervisor's officer to involve himself in the transfer assignment of inmate Hale.

The plaintiff does not dispute that if inmates are permitted to harass, annoy, show disrespect for, and intimidate officers, the safety and security of the prison is compromised. He does not dispute that inmates might be able to manipulate staff to their advantage and to conduct prohibited activities without intervention by the compromised staff.

## Analysis

*Discipline for Insolent Statement in Grievance*

The trouble arises from the plaintiff's statement in his grievance that, "Rumor

---

2. There are two Adjustment Committee Reports attached to the complaint, one dated July 13, 1999 and one dated July 7, 1999.

3. The plaintiff alleges in his complaint he was demoted to C grade for one month and B grade for one month. The difference is not relevant to the court's analysis.

4. It is apparent from the affidavits that the defendants' date of October 7, 2002, is an error.

5. The proposed fact states the inmates were transferred to Logan or Taylorville, but defendant Scott's affidavit states that they were transferred to Logan or Dixon. The plaintiff does not dispute either statement. The court accepts the statements of defendant Scott, which are made under oath.

goes according to inmates that have been on the unit since she came, [Officer Drone] is screwing a lot of the Officer's on the midnight shift along with a few Sergeants and Lt's, etc.,...." 20 Ill. Adm.Code 504, Table A, defines insolence as "talking, touching, gesturing, or other behavior which harasses, annoys or shows disrespect."

The plaintiff argues in his response that his grievance did not compromise any safety or security concerns and that he has a First Amendment right to grieve unprofessional and unethical conduct of employees. He asserts that he could have called a witness, a Chaplain Tockey, to corroborate the rumor's existence, but that his witness request was refused.[6] He further asserts that he has known inmates to use "all kinds of disrespectful names thru the griv. proc. and they were never disciplined for it," though he offers no evidence to support his assertion. [Plaintiff's Objections to the Defendant's Uncontested Facts, d/e 58, para. 17]. He also argues that he did not need to know if the rumor was true, since he clearly labeled it as a rumor in his grievance. He cites Illinois statute 730 ILCS 5/3-8-8(e) which states that "[d]iscipline shall not be imposed because of use of the grievance procedure."

Defendant Wyles avers that he wrote the disciplinary ticket because he believed that the plaintiff intended to harass, annoy and show disrespect to Officer Drone. He further believed that the plaintiff intended to either intimidate Officer Drone into treating the plaintiff more favorably or to retaliate against her. Wyles avers that he issued the disciplinary ticket to prevent the plaintiff from attempting to compromise safety and security concerns and to prevent the plaintiff from manipulating Officer Drone's reassignment by "repeating baseless rumors in a communication to other correctional staff." [Wyles Aff. paras. 7-9].

"In the First Amendment context, ... a prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974); *see also Turner v. Safley*, 482 U.S. 78, 95, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Restrictions on First Amendment rights are constitutional if they are " 'reasonably related to legitimate penological interests.' " *See Thornburgh v. Abbott*, 490 U.S. 401, 412, 109 S.Ct. 1874, 104 L.Ed.2d 459 (1989), *citing Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Additionally, the plaintiff's statements were in a grievance, which means that the discipline not only affected his free speech rights, but also his right to petition the government for redress and right to access the courts. "Prisoners have a constitutional right of access to the courts that, by necessity, includes the right to pursue the administrative remedies that must be exhausted before a prisoner can seek relief in court." *DeWalt v. Carter*, 224 F.3d 607, 618 (7th Cir.2000); *see also Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir.2002)(assuming on motion to dismiss that prison grievances may be protected by speech or petition clauses of the First Amendment and right to access the courts).

It is settled that prison officials may discipline inmates for insolent and disrespectful behavior, for obvious legitimate penological concerns of security and order. In *Ustrak v. Fairman*, 781 F.2d 573, 579 (7th Cir.1986), the Seventh Circuit upheld an inmate's punishment for violating a regulation forbidding, among other

6. There is no affidavit or anything else from Chaplain Tockey in the record.

things, disrespect or insolence. The inmate in *Ustrak* had written a letter describing prison officers as " 'stupid lazy assholes' " and challenging them to " 'bring their fat asses around the gallery at night.' " 781 F.2d at 580. The Seventh Circuit held that "[i]f inmates have some First Amendment rights, still they have only those rights that are consistent with prison discipline ... We can imagine few things more inimical to prison discipline than allowing prisoners to abuse guards and each other. The level of violence in American prisons makes it imperative that the authorities take effective steps to prevent provocation." *Id.* Other cases the court has found upholding discipline for insolent language involve similar epithets and "fighting words." *See Leonard v. Nix,* 55 F.3d 370, 375 (8th Cir.1995)(racial obscenities in outgoing letter: "They really got pissed off for me calling him [the warden] a N———. Ha. That's why I'm putting it in this letter so many times." ..."F——that Black B and all his F—ing Merry Little Band."); *In re Parmelee,* 63 P.3d 800 (Wash.Ct.App.2003)(statements in written grievances calling officer "piss-ant officer," "asshole," "prick," and "shithead").

The court has found no Seventh Circuit case addressing whether prisoners can be punished for insolent statements in grievances, and the parties have offered none. The Ninth Circuit held in *Bradley v. Hall,* 64 F.3d 1276 (9th Cir.1995), *citing Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977)(other citations omitted), that a prison regulation prohibiting disrespectful language, though facially valid, was unconstitutional as applied to a prison grievance because it unnecessarily burdened a prisoner's "fundamental right of access to the courts." The prisoner in *Bradley* was disciplined for using "disrespectful" language in a written grievance complaining about a prison employee's conduct when he wrote:

Her [the guard's] actions shows her misuse of her authority and her psychological disorder needs attention. Then you wonder why things happen like that guard getting beat down? I suggest you talk to this woman and have her act professionally instead of like a child.

*Bradley,* 64 F.3d at 1278. The *Bradley* court reasoned that the rule, though "rationally related to a legitimate interest," was an exaggerated response when balancing the "importance of the prisoner's infringed right against the importance of the penological interest served by the rule." 64 F.3d at 1280. However, the Supreme Court in *Shaw v. Murphy,* addressing a separate First Amendment issue, implicitly disapproved of *Bradley's* balancing act and affirmed that *Turner* is the test for First Amendment claims, without regard to the purpose of the communication. *Shaw v. Murphy,* 532 U.S. 223, 229 n. 2, 121 S.Ct. 1475, 149 L.Ed.2d 420 (2001). In any event, *Bradley* is not controlling in this Circuit, and this court declines to adopt *Bradley's* blanket rule that discipline *"merely* for using hostile, sexual, abusive or threatening language" in grievances is unconstitutional. *Bradley,* 64 F.3d at 1281 (emphasis supplied).

Cases involving discipline for false statements in grievances may also be instructive because the plaintiff's statements here became insolent only after the defendants determined the plaintiff had no evidence to support them. No doubt the rumor was scandalous, but the defendants do not argue that the plaintiff could not have reported Officer Drone's sexual misconduct if he had evidence that it was true. Sexual misconduct by a prison employee on the job would be a serious infraction and, the court presumes, an infraction reportable by inmates in a grievance. Like the insolence issue, the court has found no Seventh Circuit case discussing discipline for false accusations in a grievance, but a few

courts outside this Circuit have upheld such discipline, though their analyses and conclusions differ. *See Hancock v. Thalacker*, 933 F.Supp. 1449, 1490 (N.D.Iowa, 1996)(proof by preponderance of evidence that grievance statements knowingly false required to impose discipline); *Curry v. Hall*, 839 F.Supp. 1437, 1440 (D.Or. 1993)(no First Amendment right implicated by discipline for false statements in grievances; actual malice standard does not apply); *see also Wolfel v. Bates*, 707 F.2d 932, 934 (6th Cir.1983)(invalidating punishment for false statements in petition, but only on grounds that the officials had not found that statements false or maliciously communicated).

■ Following *Ustrak's* reasoning, the court sees no reason why the insolence regulation cannot be applied to statements in an inmate's grievance, just as it is to statements in an inmate's letters. Adopting the Ninth's Circuit's approach in *Bradley* would permit inmates to use the grievance procedure for the purpose of abusing guards. " . . . [T]he grievance procedure is for the purpose of bringing issues to the attention of the jail authorities, not a forum to make disparaging, degrading, abusive comments about correctional staff." *In re Parmelee*, 63 P.3d 800, 807. The court concludes that the insolence regulation may be constitutionally applied to inmates' statements in grievances, provided that application passes the *Turner* test established by the Supreme Court. That is, the application must be "reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

■ Here, the determination of whether the plaintiff's discipline passes that test turns in large part on whether the plaintiff had any basis for making the allegation. That question is easily resolved against him on the record. He does not seriously dispute that he had *no* evidence that defendant Drone was having sexual relations with other officers on her shift, and he admitted to defendant Wyles and the Adjustment Committee that the statements were "only" rumors. Construing the plaintiff's deposition liberally in his favor, he included the rumor merely because he thought it *might* be true and wanted to include everything bad he had seen and heard about Officer Drone. Yet he admitted that he did not personally see correctional Officer Drone being intimate with anyone. His speculation that the rumor *might* be true was based only on conversations he observed between Officer Drone and other inmates and officers (though he did not hear what was said and cannot remember anyone's name), and the fact she had been staffed on the unit (the "best housing unit in the whole joint") longer than the typical 90 day shift. [*See* Plaintiff's Dep. pp. 24–31 (where he discusses the reasons he put the rumor in the grievance). The court need not determine in general the quantum of evidence or scienter necessary for disciplining false accusations of sexual misconduct, since the defendants here had ample reason to conclude that the plaintiff knowingly made a scandalous accusation without any factual basis.

Applying the *Turner* test, the record compels the conclusion that the plaintiff's discipline was reasonably related to the prison's legitimate interest in preventing manipulation and harassment of its employees. The plaintiff's grievance spawned an investigation, holding Officer Drone up to ridicule and a complete loss of respect and authority as to both inmates and other officers. A correctional officer without authority is a threat to the security of the institution. Tolerating the plaintiff's statements, in light of the plaintiff's admissions to defendant Wyles that they were only rumors, could lead to a general breakdown of the authority and effectiveness of Offi-

cer Drone and other officers facing bogus charges of sexual misconduct. It was reasonable for the defendants to sanction the plaintiff for making such a scandalous allegation in his grievance with no evidentiary support. The court could do the same under Fed.R.Civ.P. 11(b)(3), which requires allegations in pleadings (even a *pro se* pleadings) to "have evidentiary support, or, if specifically so identified, are likely to have evidentiary support" based on a reasonable inquiry by the pleader. *Divane v. Krull Electric Co.,* 319 F.3d 307 (7th Cir.2003)(upholding district court's sanctions against party filing counterclaim without reasonable inquiry or evidentiary support); *Fries v. Helsper,* 146 F.3d 452, 458 (7th Cir.1998)(Rule 11's purpose " 'is to deter baseless filings in the district court ...' ")(*quoting Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990)). The court according concludes that the defendants did not violate the plaintiff's constitutional rights by disciplining him for statements in his grievances.

The plaintiff argues that his statements were not false or insolent because he labeled them as rumors, thus admitting up front he did not know if the rumors were true. The plaintiff's grievance belies this characterization. His statements, taken as a whole, clearly insinuate that the rumor was more than just a rumor—the plaintiff implied that Officer Drone manipulated her retention in the unit by having sexual relations with officers, and referred to the rumor for corroboration. The defendants understandably took the allegations seriously and launched an internal investigation. [Grievance Officer's Report dated 7/7/99, attached to Complaint: "The allegations/accusations Mr. Hale cites ... are quite serious in nature. The matter has already been referred to Internal Affairs for Investigation."]. In any event, as discussed above, the defendants had a legitimate penological reason for disciplining the plaintiff for putting the rumor in his grievance, even if he identified it as a rumor.

■ Even if the court found a constitutional violation, the defendants would be entitled to qualified immunity. Government officials performing discretionary functions are not liable unless they "violate clearly established statutory or constitutional rights then known to a reasonable officer." *Saffell v. Crews,* 183 F.3d 655, 658 (7th Cir.1999), *citing Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). The analysis is a "fact-specific question which depends upon the clearly established law at the time." *Hinnen v. Kelly,* 992 F.2d 140, 142–43 (7th Cir.1993). *Saffell,* 183 F.3d at 658; *Jones v. City of Chicago,* 856 F.2d 985, 994 (7th Cir.1988). If conduct is based on an objectively reasonable decision, qualified immunity does apply, even if that conduct is later determined to be wrong. *Saffell,* 183 F.3d at 658. As already stated, the court found no binding precedent on point addressing discipline for false or insolent statements in grievances, and analogous cases apply different approaches and reach different results. A reasonable officer could have objectively believed that disciplining the plaintiff in this instance did not offend the constitution.

*Retaliation for Exercising First Amendment Rights*

*Transfer to Medium Security Prison*

■ The plaintiff does not dispute that Lincoln (a minimum security prison at the time) was transformed to an all-female prison, making his transfer inevitable. He argues instead that his transfer to Logan, a medium security prison, rather than to another minimum security prison, constituted the retaliation. Yet he does not dispute defendant Scott's averment that the majority of men were transferred to

Logan or Dixon, both medium security prisons. He does not offer any examples of similarly situated inmates who were transferred to a minimum security prison. Further, over two hundred inmates were transferred to Logan as part of the transformation. The plaintiff was transferred to Logan on September 20, 2000, and about 260 more inmates were transferred there a little over two weeks later. The plaintiff asserts that retaliation is obvious because he was transferred first, but no reasonable inference of retaliation arises from this fact. Additionally, the plaintiff does not point out any particular grievances or litigation that allegedly spurred the retaliatory transfer. He alludes generally to his grievance and litigation activities, but the grievances in the record go back to 1999, including his "insolent" grievance, well over a year before he was transferred. Further, the plaintiff provides no evidence to rebut the affidavit of Jeff Hamilton, who was involved in the process of transferring the inmates, and who avers that inmates were selected at random by the transfer coordinator's office, with the exception of factoring in an inmate's list of documented enemies. The transfer coordinator's officer communicated the assignments to Mr. Hamilton, who then initiated the paperwork and forwarded it for the proper signatures. [Hamilton Aff. para. 3–6]. The plaintiff counters that the warden's signature is required for every transfer, but that does not address Hamilton's assertion that the assignment was random. In sum, the plaintiff has failed to produce any competent evidence that would allow a reasonable juror to conclude that he was transferred in retaliation for his First Amendment activities. Summary judgment must therefore be granted to the defendants on this claim.

### Defendant Wildman

The plaintiff alleges that defendant Wildman retaliated against the plaintiff for exercising his right of access to the courts by refusing him copies of necessary legal documents and/or otherwise hindering his use of the library. The defendants assert that the plaintiff has no evidence that retaliation was a substantial or motivating factor in defendant Wildman's alleged denial of photocopies, early library closing or other actions. They point to the plaintiff's statements in his depositions where the plaintiff admits that the denial of photocopies was only temporary and pursuant to what Wildman stated was a state-wide policy against providing photocopies of cases for inmates. [Plaintiff's Dep. 92]. The plaintiff further stated that he learned later that there was no such statewide policy, and that inmates were allowed such copies as long as they paid for them. *Id.* He also averred that defendant Wildman would not let him make copies when he had a negative trust balance, that once he was not permitted to use the typewriter, and the library was closed too often. [Plaintiff's Dep. p. 95].

The court agrees that the plaintiff has failed to offer any competent evidence that could permit a reasonable juror to infer defendant Wildman's actions were taken in retaliation for his grievance and litigation pursuits. He does not dispute the defendants' argument that she would have taken the same action regardless of the plaintiff's litigation and that the photocopying policy and library hours applied to all inmates, not just to the plaintiff. The plaintiff only repeats his conclusory allegations, which were sufficient to overcome a motion to dismiss, but not a motion for summary judgment. Summary judgment must therefore be granted to the defendants on this claim as well.

IT IS THEREFORE ORDERED:

1) The defendants' motion for summary judgment [d/e 53–1] is granted. Summary judgment is granted to the

defendants on all the plaintiff's claims. All pending motions are denied as moot, and this case is closed, with the parties to bear their own costs;

2) If the plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment. Fed. R.App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R.App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $105 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C.1915(g).